No. 81-376

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

IN RE THE MARRIAGE OF
RODNEY LASTER,

Petitioner and Appellant,

and

JUNE M. LASTER,

Respondent and Respondent.

---

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

Boscher and Boschert, Billings, Montana
Alan J. Lerner argued, Big Fork, Montana

For Respondent:

Berger, Sinclair and Nelson, Billings, Montana
James J. Sinclair argued, Billings, Montana

---

Submitted: January 13, 1982

Decided: APR 15 1982

Filed: APR 15 1992

_Thomas J. Kearney_ Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

The husband, Rodney Laster, appeals from a judgment entered by the District Court of the Thirteenth Judicial District, Yellowstone County, in which the parties' marriage was dissolved, the marital estate divided, and the wife awarded $350 per month in maintenance, as well as attorney fees and costs.

The Lasters were married for twenty-nine years. They had three children, two are now adults. The third child was severely disabled, both physically and mentally, requiring total care. The wife quit her secretarial job in 1956 to care for her disabled child, who lived to the age of ten.

The husband and wife separated in April 1979. The husband moved to Montana in December 1979 while the wife stayed in Pennsylvania.

After their separation the wife obtained a job as a floor lady in a garment shop. She is now fifty-eight years old, and her gross salary is $406.20 every two weeks.

The District Court determined that the wife's net salary is $308 every other week. In arriving at this figure the District Court subtracted from the gross salary all of the itemized deductions (federal, state and local taxes, social security and union dues) taken out of the wife's bi-weekly pay check. By multiplying $308 times twenty-six pay periods, and dividing by twelve, the District Court found that the wife's average monthly spendable income is $667.

The District Court found that the wife's monthly expenses total $806. To supplement her income, the wife has rented a mobile home owned by the parties for $165 per month.

The wife is not eligible for full retirement benefits since she began her job after the age of fifty-five. She will receive a small pension of $33.60 per month if she works until she is sixty-seven.

The husband is fifty-one years old. He has multiple sclerosis but it is in remission and there is no evidence on the record that it impairs his ability to work. The husband presently works for the federal government as an OSHA compliance officer in Billings, Montana.

The husband's gross income was $27,854 in 1981, $25,608 in 1980. The District Court found that in 1980 the husband's spendable income was $1,865 per month. The District Court arrived at this figure by deducting only the federal taxes from the husband's gross income and dividing by twelve. Unlike its determination of the wife's monthly spendable income, the District Court did not look to the monthly deductions taken out of the husband's paycheck. The District Court also found that the husband's fiancee contributes $100 per week and this additional income would serve to offset future living expenses.

In addition to supporting himself, the husband supports his fiancee and his fiancee's daughter. His monthly expenses were found to be $1,535 per month. Taking the $1,865 spendable income and subtracting the $1,535 in expenses, the District Court determined that the husband was able to pay over $300 in maintenance to the wife.

The husband has three retirement programs, two vested but not matured and one not vested. All of the payments of the first two plans were made during the parties' marriage. Under the first plan, the husband will receive $750 per

month when he reaches the age of sixty. Under the second plan, the husband will receive $304 per month when he reaches the age of fifty-nine. The husband is presently contributing to a third plan which will vest in approximately five years.

Excluding the value of the husband's retirement benefits, the District Court valued the marital assets at $73,580, liabilities at $18,359.27, and net marital estate at $55,220.73. The major disputed valuations are the family home in Pennsylvania and the jewelry acquired during the marriage. Evidence of these valuations was indefinite since appraisal figures were based mostly on the personal opinions of the parties, formed through informal inquiries or reliance on amounts of insurance coverage.

Except for the retirement benefits, the District Court divided the marital property with approximately 78% to the wife and 22% to the husband. The District Court listed its reasons for such a disproportionate distribution stating that for the past three years the wife has been solely responsible for the mortgage payments on the family home and ten-acre tract. This, coupled with the length of the marriage, the devotion of the wife to the care of her disabled child, the wife's willingness to undertake employment at the age of fifty-six years and the disparity of earning capabilities, justified the distribution. To equalize this disproportionate distribution, the District Court awarded the wife a one-third share in each of the husband's retirement plans rather than the one-half share she requested.

After considering the nature of the property involved, in that the property awarded to the wife was not

income producing but income reducing, the District Court found there was not sufficient property in the marital estate to provide for the reasonable needs of the wife. The District Court further found that the husband was financially able to contribute $350 per month for the support of the wife and awarded her that amount until her death, until she remarries, or until the husband retires.

The District Court further awarded the wife $541 for her expenses of traveling to Montana and staying here during the trial. Finally, the District Court found that the wife did not have sufficient funds to pay attorney fees and ordered the husband to pay $1,050 in reasonable attorney fees.

Four basic issues have been presented by the parties:

1. Whether the District Court erred in its equitable apportionment of the marital estate?

2. Whether the District Court erred in awarding maintenance to the wife?

3. Whether the District Court erred in awarding the wife a portion of the husband's retirement benefits?

4. Whether the District Court erred in awarding attorney fees and costs to the wife?

The husband raises three issues in addition to these basic four:

1. Whether the District Court erred by considering the income of the husband's fiancee in awarding maintenance to the wife.

2. Whether the husband's right to equal protection was violated by awarding the wife a share of his retirement benefits.

3. Whether the District Court's judgment is a nullity since it did not state in its findings of facts that the marriage was irretrievably broken or that one of the parties was domiciled in Montana.

The husband contends that the District Court abused its discretion because a 78%-22% property distribution is *per se* inequitable and because the values the District Court placed on the main marital assets were based on speculative and incompetent evidence. It should be noted that the 78%-22% proportion does not include consideration of the District Court's division of the husband's retirement benefits and is therefore misleading.

In determining whether a trial court abused its discretion, the standard for review is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. In re the Marriage of Creon (1981), ___ Mont. ___, 635 P.2d 1308, 38 St.Rep. 1828; In re Marriage of Martens (1981), ___ Mont. ___, 637 P.2d 523, 38 St.Rep. 2135.

The District Court's duty under section 40-4-202(1), MCA, is to consider the factors therein and then divide the property equitably. An equitable division does not necessarily mean an equal division. As has been noted many times by this Court, and most recently in <u>Martens</u>:

> "'Although the District Court may equally divide the marital assets, such a distribution is not mandated by section 40-4-202, MCA . . . Section 40-4-202 is flexible and it vests a good deal of discretion in the District Court . . . We have stated, before and after the adoption of the statute, that each case must be looked at individually, with an eye to its unique circumstances . . .' (Citations omitted.) In Re Marriage of Aanenson

-6-

(1979), ___ Mont. ___, 598 P.2d 1120, 1123, 36 St.Rep. 1525." 637 P.2d at 526.

In Finding of Fact No. 17, the District Court gave extensive reasons for giving the wife 78% of the marital property: the wife has been solely responsible for mortgage payments on the family home since 1979, the length of the marriage, the devotion of the wife to her disabled child, and the great disparity in earning capability. The District Court recognized that the wife was receiving an unusually large percentage of the marital property and to equalize the situation, the District Court did not award the wife as much of the retirement benefits as she had requested. If the division of retirement benefits is considered, the wife in actuality is receiving less than 78% of the marital estate. Clearly, the District Court considered the factors listed in section 40-4-202, MCA, and used very conscientious judgment in distributing the property.

The husband next contends that the District Court did not have sufficient competent evidence to properly evaluate the marital estate. While it is true that the trial court was not given the best evidence on which to base its valuations, the District Court's determinations of values will stand unless they are clearly erroneous. Rule 52(a), M.R.Civ.P.; In re Marriage of Creon, supra. There is nothing in the record to show that its valuations were clearly erroneous.

A District Court's award of maintenance must be made in accordance with the factors set forth in section 40-4-203, MCA. It is well established that in determining whether a spouse seeking maintenance "lacks sufficient property" to provide for her need, "sufficient property" means income

producing, not income consuming, property. See section 40-4-203(1)(a), MCA; In re the Marriage of Herron (1980), ___ Mont. ___, 608 P.2d 97, 37 St.Rep. 387; In re the Marriage of Bowman (1981), ___ Mont. ___, 633 P.2d 1198, 38 St.Rep. 1515.

Here, the District Court carefully considered the nature of the property involved and the factors listed in section 40-4-203, MCA. The District Court found that no matter how favorable the property distribution was to the wife, such a distribution cannot substitute completely for maintenance.

While we agree that the wife requires some maintenance, it must be noted that the District Court improperly calculated the husband's monthly spendable income. The District Court looked only to the federal taxes deducted from the husband's monthly paycheck. It failed to consider other deductions, such as state taxes, retirement payments, health and life insurance payments and union dues, in determining the husband's monthly spendable income. This error is not cause for remand, however, since the husband is still able to pay $350 per month in maintenance.

Under section 40-4-203(2)(f), MCA, the District Court, in determining the amount of maintenance, must consider the financial ability of the spouse paying maintenance to meet his own needs while meeting the needs of his spouse. When the husband's monthly deductions are subtracted from the figures used by the District Court, the husband's monthly spendable income seems to be $300 less per month than originally calculated. Nevertheless, the husband has income which the District Court did not use in determining

his spendable monthly income--namely, the contributions by his fiancee, his tax rebate, and the rental fee for his mobile home. Taking into consideration the $400 per month contributed by the husband's fiancee, the $1,286 tax refund received by the husband, and the $165 per month rental fee for the mobile home, it is apparent that the husband is still able to pay the $350 per month in maintenance. The District Court's miscalculation is, therefore, harmless error.

The husband contends that under Duffey v. Duffey (1981), ___ Mont. ___, 631 P.2d 697, 38 St.Rep. 1105, the income of the husband's fiancee cannot be used in determining the husband's ability to pay.

Duffey is not on point here. It deals with the consideration of a present wife's income in determining the ability of the husband to pay child support.

This Court has previously considered and approved a trial court's calculation of "family" net income based on the earnings of the husband and his future wife. This figure was used to determine the future ability of the husband to pay maintenance. See, In the Marriage of Cromwell (1979), 180 Mont. 40, 588 P.2d 1010. We see no reason not to follow the Cromwell case. The income of the husband's fiancee may, therefore, be used to determine the husband's future financial status.

The husband also contends that the District Court erred by awarding the wife $1,050 in attorney fees and $541 in costs.

Under section 40-4-110, MCA, a District Court is given discretion to award a reasonable amount in attorney

fees and costs incurred prior to commencement of a proceeding and after entry of judgment. In Wilson v. Bean (1981), ___ Mont. ___, 628 P.2d 287, 38 St.Rep. 751, we set down the standard for reviewing the award of attorney fees:

> "In order to be awarded fees pursuant to section 40-4-110, MCA, the petitioning party must make a showing of necessity. . . The award must be reasonable, and must be based on competent evidence. . . Reasonableness is shown by means of a hearing allowing for oral testimony, the introduction of exhibits, and the opportunity to cross-examine. . . The award will not be disturbed by this Court if it is supported by substantial evidence. . ." (Citations omitted.) 628 P.2d at 289.

Here, testimony was presented and necessity shown for the award of attorney fees. An uncontested affidavit was submitted showing the costs the wife incurred when she traveled to Montana to contest this case. The District Court's award of attorney fees and costs is, therefore, supported by the record.

The husband contends next that the District Court erred by awarding to the wife one-third of the benefits from each of the husband's retirement plans. The husband claims that such an award is an abuse of discretion in light of the large amount of property distributed to the wife and in light of the amount of maintenance awarded. The husband also contends that by awarding the wife a portion of his retirement benefits, the District Court violated his right to equal protection under the laws.

The District Court's award of retirement benefits cannot in itself be considered unfair. The District Court explicitly stated that maintenance would discontinue when the husband retires. In light of the substantial evidence supporting an award of maintenance here, the substituting of

a portion of retirement benefits for maintenance cannot be considered an abuse of discretion.

The husband's equal protection argument lacks any merit since it was not raised at trial and since there is no "plain error" in the distribution of the retirement benefits. See, Easton v. Easton (1978), 175 Mont. 416, 574 P.2d 989, and Halldorson v. Halldorson (1977), 175 Mont. 170, 573 P.2d 169. The husband's argument also fails because no classification was created as he contends.

The husband claims that two recent Supreme Court cases set up a classification "which discriminates in its application to divorce settlements against persons whose retirements are not under the Federal Railroad Retirement Act or from the Military." See, Hisquierdo v. Hisquierdo (1979), 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1; McCarty v. McCarty (1981), 49 U.S.L.W. 4850; for Montana's recognition of McCarty see, In re the Marriage of McGill (1981), ___ Mont. ___, 637 P.2d 1182, 38 St.Rep. 2105.

Quite simply, neither Hisquierdo nor McCarty gave rise to such a classification. These cases were merely construing federal statutes and discerning the intent of Congress in enacting those specific retirement plans. These cases had no effect on any private or other federal retirement plans. The husband is arguing apples and oranges.

It is well established in this state and in most other states that, as a general rule, retirement benefits are part of the marital estate. For list of cases, see 94 A.L.R.3d 176 et seq.; In re the Marriage of Karr (1981), ___ Mont. ___, 628 P.2d 267, 38 St.Rep. 506, and cases cited therein. The reasoning behind this rule is that the

District Court, in apportioning the marital assets, must consider "the opportunity of each for the acquisition of capital assets and income." Section 40-4-202(1), MCA.

The District Court explicitly found that maintenance would end when the husband retired. As a form of marital property and as a substitute for maintenance, the District Court granted the wife a one-third share in each of the retirement plans. This well-reasoned solution is supported by evidence of the wife's future needs and the husband's future ability to meet those needs. The District Court's apportionment of retirement benefits must therefore be upheld.

The last contention raised by the husband is whether the District Court's failure to find that the marriage was irretrievably broken and to find that one of the parties has been domiciled in Montana for ninety days makes the District Court's judgment void for lack of jurisdiction.

The husband failed to make any exceptions to the District Court's findings of facts and conclusions of law. Failure to make such exceptions is fatal when the issue involved does not affect the substantial rights of the parties. See, In re the Marriage of Barron (1978), 177 Mont. 161, 580 P.2d 936; Turner v. Turner (1971), 157 Mont. 262, 484 P.2d 1303; and Halldorson, supra.

Here, the record supports the District Court's jurisdiction both over the subject matter and the parties. The failure to make these findings, in this case, is merely a technical oversight by the District Court and does not affect the substantial rights of the parties. The husband's failure to except to the District Court's findings,

therefore, precludes this Court from review of the matter.

Finding no abuse of discretion by the District Court, its judgment is affirmed. Respondent's motion for reasonable attorney fees and costs is granted and remanded to the District Court for proper determination.

_____
                Justice

We concur:

_____
_____
_____
_____
                Justices