Baxter K. GAMBLE and Yang-
Cha Gamble, Appellants,

v.

NORTHSTORE PARTNERSHIP,
Appellee.

No. S-9004.

Supreme Court of Alaska.

Aug. 10, 2001.

Albert Maffei, Law Offices of Maffei, Inc., Anchorage, for Appellants.

Robert H. Hume, Jr., Copeland, Landye, Bennett and Wolf, LLP, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

1. The trial court determined that the grantor, the Small Business Administration, agreed to the recorded easement. The court determined that the original intent of the parties was to grant an easement on the existing curb cuts and that the recorded easement was faithful to this intent. This holding by the trial court is supported by evidence and is not clearly erroneous. We therefore affirm the denial of reformation of the recorded easement. Because this issue is dispositive, we do not consider the other issues raised with respect to reformation.

*OPINION*

MATTHEWS, Chief Justice.

The trial court denied Baxter and Yang-Cha Gambles' request to reform a recorded easement agreement in order to reduce in size an easement crossing their land. The court awarded full attorney's fees, $102,067.30, to Northstore Partnership, which included approximately $25,500 for work in a prior appeal to this court. We summarily affirm the denial of reformation,[1] affirm the award of full reasonable attorney's fees for work in the superior court, but conclude that the award of fees on appeal was excessive and should be reduced to $18,000.00.

I. *The Easement Agreement's Fee Provision Applies.*

Civil Rule 82 provides for the award of partial attorney's fees to the prevailing party in litigation as a matter of course. But Civil Rule 82 may be overridden by agreements (or statutory provision) concerning attorney's fees.[2] The provision in the easement agreement concerning attorney's fees reads as follows:

Should suit or legal action be instituted to enforce any of the foregoing terms, covenants, conditions, encumbrances, or easements, the losing party, in addition to any judgement, order, or decree, agrees to pay the prevailing party its reasonable attorney fees and court costs as may be awarded by a court adjudging or decreeing such suit or action.

Contract provisions such as that in the easement agreement that call for "reasonable attorney's fees" are interpreted as calling for full reasonable attorney's fees.[3] By contrast, the objective of Civil Rule 82 is to award partial attorney's fees.[4]

2. *See Jackson v. Barbero,* 776 P.2d 786, 788 (Alaska 1989); *Ursin Seafoods, Inc. v. Keener Packing Co.,* 741 P.2d 1175, 1181 (Alaska 1987); Alaska R. Civ. P. 93.

3. *See Jackson,* 776 P.2d at 788; *Ursin,* 741 P.2d at 1181.

4. *See Malvo v. J.C. Penney Co.,* 512 P.2d 575, 588 (Alaska 1973).

The Gambles argue that the attorney's fees provision in the easement agreement does not apply to the present case because theirs was an action for reformation, not an action to enforce the terms of the easement agreement. Northstore counters that the suit was a contest over the enforceability of the recorded easement. Northstore notes that the case was concluded with a declaration that "the recorded easement remains in full force and effect according to its terms."

We believe that Northstore has the better of the arguments. Its defense against the Gambles' suit for reformation was similar to a counterclaim seeking a declaration that the easement agreement was valid. Northstore, in fact, filed such a counterclaim, but dismissed it by agreement prior to trial. But this did not change the issues actually tried. The trial focused on the question of whether the recorded easement was enforceable according to its terms.

Arguably there is a difference between a suit to enforce an easement agreement and a suit to reform such an agreement. An enforcement suit presupposes an alleged violation of the agreement. The court must then determine whether such a violation has occurred. By contrast, a reformation suit does not necessarily involve a violation. Instead, the party seeking reformation contends that the written agreement does not accurately reflect the parties' actual agreement and seeks a decree conforming the written agreement to the actual agreement. A Florida court found this distinction determinative in concluding that a contract's fee provision did not apply to an action for reformation because it was not an action to enforce the contract.[5]

But there is another, broader, meaning of the contractual language here involved. A "suit ... to enforce any of the ... terms" of an agreement can refer to a suit to confirm the validity of the terms of an agreement in the face of a challenge.[6] We believe that in this sense Northstore's defense can be regarded as enforcement of the terms of the agreement. This interpretation has been accepted in other jurisdictions as well.[7]

The Gambles' action for reformation was the opposite of an enforcement action. They asked that the agreement as recorded not be enforced, prompting Northstore's defense that the agreement was valid and enforceable as written. Although Northstore's defense was not itself a suit or legal action, it could have been framed as a counterclaim. This fact, and the fact that for a time the defense was expressed in a counterclaim, illustrates that the difference between a suit and a defense to a suit can be of little consequence. Here, we believe that Northstore's defense, which resulted in a declaration affirming the validity of the recorded easement, fairly comes within the agreement's provision concerning attorney's fees.

II. *The Gambles Have Not Demonstrated That the Attorney's Fees Awarded for Services in the Superior Court Were Unreasonable.*

The Gambles argue that the $102,067.30 in attorney's fees awarded was unreasonable. Their sole argument on this point is that the fees charged by Northstore's attorneys were double the amount of fees billed to the Gambles by the Gambles' attorneys. While a discrepancy of this nature can be some evidence that fees are unreasonable, it is not conclusive on that point as there are a number of other possible expla-

5. *See Natarajan v. Horn*, 402 So.2d 596, 596–97 (Fla. 2nd DCA 1981) (interpreting contract clause providing that "Any party failing to comply with the terms of this contract will pay all expenses, including a reasonable attorney's fee, incurred by the other party to this contract as a result of such failure.").

6. *See Webster's Third New Int'l Dictionary* 751 (1969) ("**enforce 1:** to give force to: REINFORCE <his comment is enough to confirm and ˜the significance attributed to a free ballot>").

7. *See, e.g., Wong v. Davidian*, 206 Cal.App.3d 264, 253 Cal.Rptr. 675, 679–80 (1988) (awarding attorney's fees for reformation suit because it is suit to enforce the contract); *Webb v. Culver*, 265 Or. 467, 509 P.2d 1173, 1175–76 (1973) (suit for reformation is suit to enforce the contract for attorney's fee purposes); *Tomlinson v. Clarke*, 60 Wash.App. 344, 803 P.2d 828, 832 (1991) (treating action for reformation as one to enforce a contract) *aff'd* 118 Wash.2d 498, 825 P.2d 706 (1992).

nations for such a discrepancy. The burdens assumed by opposite sides of litigation are not necessarily equal, and it is a judgment call as to whether such a discrepancy reflects over-preparation and over-billing by one set of attorneys, or under-preparation and under-billing by the other set of attorneys. Here there was much discovery practice, two sets of motions for summary judgment, and a five-day trial. The trial court reviewed the itemized statements of Northstore's attorneys and was personally aware of the quality and quantity of the work that they did at the trial level. On this record we are unable to say that the trial court abused its discretion in determining that Northstore's attorney's fees for work in the superior court were reasonable.

### III. The Trial Court Did Not Err in Awarding Attorney's Fees for Work Done by Northstore's Attorneys on Appeal.

The trial court's award of attorney's fees included approximately $25,500 of fees incurred by Northstore in the prior appeal of this case.[8] In that appeal we reversed Northstore's summary judgment and remanded for further proceedings in the superior court.[9] We also awarded the Gambles $1,000 in attorney's fees pursuant to Appellate Rule 508(e). Following the subsequent trial, the court awarded full attorney's fees to Northstore, including attorney's fees from the previous appeal to this court. The Gambles challenge this aspect of the attorney's fee award on two grounds in addition to their argument that the fees were excessive.

First, the Gambles contend that the provision of the easement agreement concerning attorney's fees does not cover work on appeal. We find no merit to this contention. The language of the provision does not imply a limitation to fees incurred at the trial level. The general rule in other jurisdictions is that contractual provisions providing for the allowance of attorney's fees to the winning party are construed to include fees incurred both at the trial level and on appeal.[10] We agree with this rule. It is consistent with our holding in Rosson v. Boyd.[11] In Rosson, we determined that in an action under a fee-shifting statute, AS 34.35.005(b),[12] the eventual prevailing party was entitled to full reasonable attorney's fees on appeal as well as at trial. The statute did not specifically provide for appellate attorney's fees but we concluded that it would be "incongruous" to construe the statute to apply only in the superior court.[13] A similar incongruity would result if fees under the contract provision at issue here were only allowed for work in the superior court. The provision has the evident purpose of shifting reasonable fees to the winner in litigation concerning the contract. This purpose would only be partly achieved by limiting application of the provision to fees incurred in the superior court. We therefore conclude that the contract calls for fee shifting at all court levels.

The rule that fee-shifting provisions apply to fees incurred on appeal as well as at the trial court level has been held to apply regardless of whether the party who ultimately prevailed won or lost in an intermedi-

8. The prior appeal encompassed a cross-appeal by Northstore. We consider the cross-appeal as part of the prior appeal since the two cases were consolidated and considered together.

9. See Gamble v. Northstore Partnership, 907 P.2d 477 (Alaska 1995).

10. See Amos Flight Operations, Inc. v. Thunderbird Bank, 112 Ariz. 263, 540 P.2d 1244, 1249 (1975); Buescher v. Lastar, 61 Cal.App.3d 73, 132 Cal.Rptr. 124, 126 (1976); Ingle v. Perkins, 95 Idaho 416, 510 P.2d 480, 482 (1973); Hollinger v. McMichael, 182 Mont. 86, 594 P.2d 1120, 1120-21 (1979); Edwards v. Mesch, 107 N.M. 704, 763 P.2d 1169, 1172 (1988); Management Servs. Corp. v. Development Assocs., 617 P.2d 406, 408-09

(Utah 1980); Puget Sound Mut. Sav. Bank v. Lillions, 50 Wash.2d 799, 314 P.2d 935, 940 (1957); Cline v. Rocky Mountain, Inc., 998 P.2d 946, 953 (Wyo.2000); see also 25 C.J.S. Damages § 50(c) (1966) ("As a general rule, contract provisions for allowance of attorney fees are construed to include both trial and appellate fees.").

11. 727 P.2d 765 (Alaska 1986).

12. AS 34.35.005(b) provides that "[i]n an action to enforce a lien, the court shall allow as part of the costs ... a reasonable attorney fee for the foreclosure of the lien."

13. 727 P.2d at 767.

ate appeal.[14]

A party who wins an outright victory should recover all his fees without offset for the fees incurred by the other party.

The trial courts, of course, should be allowed the discretion to exclude from a fee award the fees incurred by a prevailing party in making frivolous procedural maneuvers; the primary concern in setting rules for attorney fee awards must be the encouragement of efficient litigation. Where, however, the superior court considers a motion for summary judgment meritorious and the defendant goes on to prevail in the case, the fact the summary judgment is reversed does not show the motion was frivolous. To the contrary, were we to hold a defendant who wins a case and is entitled to fees must pay the fees plaintiff incurred in defeating a motion for summary judgment, we would discourage the use of summary judgment, often an efficient means for disposing of litigation, in actions where the defendant has a strong case.[15]

We also agree with this aspect of the rule. It is to be expected that the prevailing party may not win at every intermediate step in litigation. Contract provisions such as that in the present case shift fees based on the final result of litigation. They do not call for the apportionment of fees based on how or at what level of court various intra-litigation disputes are resolved.

If such apportionment were allowed, a party who wins an unmitigated victory in a case where fees are provided for by contract would have his right to fees offset by the fact his opponent won discovery, evidentiary or other rulings during trial.... [T]here is no real distinction between that scenario and a case such as the one at bench where the settlement of an interim issue, such as summary judgment, requires a side trip to the court of appeal.[16]

The Gambles' second point is that the trial court's award of fees to Northstore for work done by Northstore's attorneys on appeal is impermissible because it conflicts with the award made by this court to the Gambles for attorney's fees on appeal. The Gambles also argue that only the supreme court, not the trial court, may award attorney's fees for work done in the supreme court.

In response, Northstore recognizes an important Alaska case on this issue, *Continental Insurance Co. v. United States Fidelity and Guaranty Co.*[17] In *Continental*, the trial court awarded Fidelity attorney's fees for work on appeal, even though at the conclusion of the appeal this court had directed that neither party to the appeal should be awarded attorney's fees.[18] We concluded that the award made by the trial court was erroneous because it conflicted with the counterpart to what is now Appellate Rule 508(e) and with our order concerning attorney's fees made at the conclusion of the appeal.[19] Northstore contends that the holding in *Continental* is inapplicable to the situation now presented, primarily because *Continental* did not involve a contractual fee-shifting provision: "while in general it is appropriate for appellate costs to be awarded under Appellate Rule 508, a prevailing party seeking reimbursement under an attorney fee agreement should be able to include the costs of interlocutory appeals in the judgment obtained from the trial court." Northstore points out that when this court decided the appeal in this case it was unknown who would ultimately prevail and be entitled to contractual attorney's fees. This problem was not presented in *Continental* because that case involved statutory, rather than contractual, attorney's fees.[20] Additionally, at the conclusion of the appeal in *Continental*, the

---

14. *See, e.g., Leo Eisenberg & Co. v. Payson,* 162 Ariz. 529, 785 P.2d 49, 55 (1989) (en banc); *Allstar Builders Corp. v. Zimmerman,* 706 So.2d 92, 92-93 (Fla. 3rd DCA 1998).

15. *Presley of S. Cal. v. Whelan,* 146 Cal.App.3d 959, 196 Cal.Rptr. 1, 3 (1983).

16. *Id.*

17. 552 P.2d 1122 (Alaska 1976).

18. *See id.* at 1124.

19. *See id.* at 1127.

20. *See id.* at 1124.

question of liability was fixed.[21]

Another case relevant to the question before us is *Rosson v. Boyd.*[22] That case involved a mechanic's lien foreclosure.[23] Alaska Statute 34.35.005(b) provides that the plaintiff who prevails in enforcing a mechanic's lien is entitled to reasonable attorney's fees. The contractor prevailed at trial and was awarded attorney's fees of $20,328.[24] The owner appealed on the merits and contended that the award of attorney's fees was an abuse of discretion.[25] The contractor cross-appealed on the merits and concerning attorney's fees.[26] The contractor argued that the court should have awarded full actual attorney's fees, $27,847.50, under the statute.[27] We rejected the owner's appeal in its entirety and the contractor's appeal on the merits.[28] But with respect to attorney's fees, we determined that it was unclear whether the trial court· had followed the statute. We therefore remanded for a determination of full reasonable fees under the statute.[29]

Initially, under the appellate rules we awarded $750 in attorney's fees to the contractor.[30] On rehearing we reconsidered the $750 award.[31] Holding that the statute applied to attorney's fees on appeal, we turned to the question of which court should determine the amount of fees for work on appeal.[32] The owner argued that the supreme court should make the determination, whereas the contractor argued that the superior court should do so.[33] We held that under the facts presented, the supreme court should make the award.[34] But we limited the effect of our ruling to cases where the ultimate winner was determined on appeal:

> Our decision is limited to instances in which the appellate disposition is completely dispositive of the case and no further trial court proceedings are contemplated. In such circumstances we think it is more efficient for the supreme court to assess the attorney's fee request.[35]

■ The limiting language quoted above suggests that the *Rosson* rule should not apply to appeals that are not dispositive on the merits. California and Arizona courts have also found this distinction critical in determining whether to award attorney's fees on appeal.[36] This also would mean that the rule in *Continental*, that only the supreme court should determine attorney's fees for work performed in the supreme court,[37]

---

21. *See id.*

22. 727 P.2d 765 (Alaska 1986).

23. *See id.* at 766.

24. *See Boyd v. Rosson,* 713 P.2d 800, 801 (Alaska 1986), *reh'g granted,* 727 P.2d 765.

25. *See Boyd,* 713 P.2d at 802.

26. *See id.*

27. *See id.*

28. *See id.*

29. *See id.*

30. *See Rosson v. Boyd,* 727 P.2d 765, 766 (Alaska 1986).

31. *See id.*

32. *See id.* at 767.

33. *See id.*

34. *See id.*

35. *Id.*

36. *See Leo Eisenberg & Co. v. Payson,* 162 Ariz. 529, 785 P.2d 49, 55 (1989) (en banc) ("At this procedural juncture, however, we cannot determine who will be the 'successful party' on appeal after remand.... [T]he ultimate successful party in this case should recover reasonable attorneys' fees for all stages of the litigation, including review before this court."); *Presley of S. Cal. v. Whelan,* 146 Cal.App.3d 959, 196 Cal.Rptr. 1, 2 (1983) ("The winner in the action ... is yet to be ·determined.... [A] party who prevails on appeal is not entitled ... to the fees he incurs on appeal where the appellate decision does not decide who wins the lawsuit but instead contemplates further proceedings in the trial court. An attorney fee award ... must wait until the lawsuit is completely and finally decided.") (citations omitted); *see also Allstar Builders Corp. v. Zimmerman,* 706 So.2d 92, 93 (Fla.App.1998) ("At this juncture, Zimmerman is not the ultimate prevailing party in the litigation and any award of fees is premature. This result would, of course, be different if the [issue] were ultimately adjudicated in Zimmerman's favor and a judgment entered thereon. A fee award at that time would be appropriate.").

37. *Continental,* 552 P.2d at 1127.

should not apply to cases not disposed of on the merits on appeal where attorney's fees are to be fixed not by the court rules but, as in *Rosson,* by a special statute [38] or, as here, by a fee-shifting contract.

We agree with these implications of *Rosson.* Where appeals are not dispositive on the merits but merely stepping stones to an as-yet-unknown final result, and where there is a statutory or contractual provision calling for an award of full attorney's fees to the party who ultimately prevails, full fees for work on appeal can best be assessed in the trial court at the conclusion of the case. As we noted in *Rosson,* where the case on the merits is fully disposed of on appeal, "it is more efficient for the supreme court to assess" attorney's fees; [39] it is likewise more efficient for the superior court to assess attorney's fees when the case is not finally decided on appeal. If the rule were otherwise, new proceedings would have to be initiated in the supreme court merely to complete the case. For these reasons we conclude that the superior court had authority to award attorney's fees to Northstore for work done by its attorneys in this court in the prior appeal brought by the Gambles.

IV. *The Attorney's Fees Awarded for the Prior Appeal Were Excessive.*

In reviewing the award of fees for the prior appeal we believe that an independent standard which gives deference to the determination of the superior court is appropriate. This hybrid standard is similar to that used in reviewing bar association discipline cases.[40] It takes into account our primary authority to award attorney's fees on appeal and our advantaged perspective on that subject, and balances these factors against the reasons of efficiency and finality that justify resting the power to make such awards in the superior court in the first instance.

Employing this standard we have reviewed the work performed for Northstore in the earlier appeal. Considering the various components determining a reasonable fee ex-

pressed in Rule 1.5 of the Rules of Professional Conduct, most importantly the lack of novelty of the issues, the nature of the controversy, the result obtained, and the time and labor that should have been required, we believe that a full reasonable fee should not have exceeded $18,000. On remand the superior court should modify the award in accordance with this conclusion.

For the above reasons, the judgment on the merits is AFFIRMED; the award of fees for services in the superior court is AFFIRMED; and the award of fees for services before this court is VACATED and REMANDED with instructions to enter an award of $18,000.

---

**38.** *Rosson,* 727 P.2d at 767.

**39.** *Id.*

**40.** *See Disciplinary Matter Involving Frost,* 863 P.2d 843, 844 (Alaska 1993).